OCTOBER AND NOVEMBER TERM, 1881, No. 224.

# Overseers of Limestone Township *versus* Overseers of Licking Township.

The place of settlement of an illegitimate child is that of the mother at the time of its birth, and though the mother afterward acquires a new settlement and takes the child with her, its settlement is not thereby changed.

ERROR to the Court of Quarter Sessions of *Clarion County.*

Appeal by the overseers of the poor of Limestone Township from an order of a magistrate removing a pauper, Mary Ann Hepler, to the said township from Licking Township.

From the depositions taken upon the appeal the following facts appeared: Mary Ann Hepler, the pauper, was born in 1846, and was the illegitimate child of Sophia Hepler. The mother was unmarried and lived with her father, who was a farmer in Limestone Township. The pauper lived with her mother at the house of Adam Hepler, the mother's father, until 1856. In that year the mother married Michael Whitmer, and took the pauper with her to the home of her husband in Licking Township. The pauper was from infancy delicate in health and of feeble mind. For about eighteen years, until the death of her mother in 1874, the pauper lived at the house of Whitmer. She then became chargeable upon Licking Township. Sophia Whitmer, the mother, obtained from her father at the time of her marriage $1500, which sum at the time of his death in 1869 or 1870 was increased to about $2366. In her will Sophia Whitmer devised and bequeathed all of her property to her

[Overseers of Limestone Township *v.* Overseers of Licking Township.]

husband, and directed " my said husband, Michael Whitmer, to pay to or for the use of my oldest daughter Mary Ann, who was born some years before my marriage, the sum of two hundred and forty dollars in one year after my death."

Counsel for Limestone Township asked the Court to rule the law as applicable to these facts as follows:

1. That, although Sophia Whitmer, the mother of the pauper in this case, had a settlement with her father, Adam Hepler, in Limestone Township, at the time her illegitimate child, the pauper in question, was born, when she subsequently married Michael Whitmer, who had a legal settlement in the township of Licking, where she and her child went and continued to reside from that time until the death of her mother, Mrs. Whitmer, a period of about eighteen years, as is established by the evidence, the settlement by birth of the pauper in Limestone was lost and followed that of her mother into Licking, and therefore the order of removal in this case should be discharged.

2. That as the evidence establishes that Sophia Whitmer at the time of her death had an estate in her own right, bestowed upon her by her father and inherited from his estate, amounting to about $2366, which she distributed by will between her husband, the pauper in question, and her other children, such material circumstances attaching to the settlement of the mother in the township of Licking would fix upon her child, the pauper in question, such settlement of the mother, and therefore the order of removal in this case should be discharged.

3. That the third section of the act of Assembly of the 27th of April, A.D. 1855, which provides that " illegitimate children shall take and be known by the name of their mother, and they and their mother shall respectively have capacity to take or inherit from each other, etc.," changes the settlement of illegitimate children from the place of their birth to that of the mother, and if she owns an estate and has such legal settlement elsewhere, where her child also had its home for a period of eighteen years, as in this case, the order of removal in this case should be discharged.

The Court, Jenks, P. J., refused assent to the foregoing points, and ordered and decreed as follows:

" And now, April 10th, 1880, after hearing the parties by counsel, it is ordered, adjudged, and decreed, that the appeal be dismissed, and the order of removal be confirmed, the costs and charges of the appellees to be fixed on evidence hereafter to be produced to the Court."

The overseers of Limestone Township then took a writ of

error, assigning as errors the refusal of the Court to affirm the above propositions.

*Boggs & Weidner* for plaintiff in error.

Licking Township has had all the benefit of taxation upon the property of Adam Hepler taken by his daughter from Limestone. The settlement of the pauper followed that of her mother into Licking Township. The eleventh section of our act of Assembly of the 13th of June, 1836, which declares that " every illegitimate child shall be deemed to be settled in the place where the mother was legally settled at the time of the birth of such child," although it changes the common-law rule of the place of the birth establishing the settlement, it recognizes in its provisions the parentage of the mother as well as her legal settlement, as the principle upon which that change was made.

And again, the third section of the act of Assembly of the 27th of April, 1855, which provides that " illegitimate children shall take and be known by the name of their mother, and they and their mother shall respectively have capacity to take or inherit from each other, personal estate as next of kin, and real estate, as heirs in fee simple ; and as respects said real and personal estate so taken and inherited, to transmit the same according to the intestate laws of this State," is another step in the direction of right and justice: Opdyke's Appeal, 13 Wr., 378 ; Washington v. Overseers of Beaver, 3 W. & S., 548 ; Philadelphia v. Overseers of Bristol, 6 S. & R., 561 ; Overseers of Nippenose v. Overseers of Jersey Shore, 12 Wr., 402 ; Burrell Township v. Pittsburg Guardians of the Poor, 12 P. F. Smith, 472.

*Wilson & Jenks* for defendant in error.

By the act of 1836 the settlement of an illegitimate child was changed to the place the mother was legally settled in at the time of the birth: Lower Augusta Township v. Selinsgrove, 14 P. F. Smith, 166 ; Overseers of West Hemlock v. Overseers of Madison, 2 Legal Opinion, p. 161.

October 31st, 1881.—Per Curiam: The act of June 13th, 1836, expressly enacts that " every illegitimate child shall be deemed to be settled in the place where the mother was legally settled at the time of the birth of such child." The act of April 27th, 1855, only confers upon illegitimate children the capacity to take or inherit real and personal estate from their mother. But none of the other rights of legitimate children are conferred upon them. It follows that

their settlement does not follow the settlement of the mother
when she changes her settlement. The settlement of them
both remains until they acquire a new settlement of their
own.

Order affirmed.